VIRGINIA:

## BEFORE THE VIRGINIA STATE BAR DISCIPLINARY BOARD

IN THE MATTERS OF                    VSB DOCKET NOS. 23-042-127395,
CHRISTOPHER LOUIS CONTRERAS                           23-042-127424,
                                                      23-042-127768,
                                                      23-042-126886
                                                      23-042-127699

## CONSENT TO REVOCATION ORDER

On August 10, 2023, came Christopher Louis Contreras and presented to the Board an Affidavit Declaring Consent to Revocation (hereinafter "Affidavit") of his license to practice law in the courts of this Commonwealth. By tendering his Consent to Revocation at a time when a disciplinary complaint, Investigation or Proceeding is pending, the nature of which is specifically set forth in the attached Affidavit, and Certification, Respondent acknowledges that the material facts contained in the pending disciplinary complaint, Investigation or Proceeding are true.

The Board having considered the Affidavit, and Bar Counsel having no objection, the Board accepts his Consent to Revocation. Bar Counsel has no objection to an effective date of August 25, 2023.

Upon consideration whereof, it is therefore ordered that Christopher Louis Contreras's license to practice law in the courts of this Commonwealth be and the same hereby is revoked, and that the name of Christopher Louis Contreras be stricken from the Roll of Attorneys of this Commonwealth, effective August 25, 2023.

It is further ORDERED that The Respondent must comply with the requirements of Part 6, Section IV, Paragraph 13-29 of the Rules of the Supreme Court of Virginia. The Respondent shall forthwith give notice by certified mail of the Revocation of his license to practice law in the Commonwealth of Virginia, to all clients for whom he is currently handling matters and to all opposing Attorneys and presiding Judges in pending litigation. The Respondent shall also make appropriate arrangements for the disposition of matters then in his care in conformity with the

wishes of his clients. The Respondent shall give such notice immediately and in no event later than 14 days of the effective date of the Revocation, and make such arrangements as are required herein as soon as is practicable and in no event later than 45 days of the effective date of the Revocation. The Respondent shall also furnish proof to the Clerk of the Disciplinary System of the Virginia State Bar within 60 days of the effective date of the Revocation that such notices have been timely given and such arrangements have been made for the disposition of matters.

It is further ORDERED that if the Respondent is not handling any client matters on the effective date of the Revocation, he shall submit an affidavit to that effect within 60 days of the effective date of the Revocation to the Clerk of the Disciplinary System at the Virginia State Bar. The Board shall decide all issues concerning the adequacy of the notice and arrangements required herein.  The burden of proof shall be on the Respondent to show compliance.

It is further ORDERED that the Clerk of the Disciplinary System shall mail an attested copy of this order by electronic, regular and certified mail, return receipt requested, to the Respondent, Christopher Louis Contreras, at his address of record with the Virginia State Bar, being Contreras Law PLC, 4250 Fairfax Drive., 6th Floor, Arlington, VA 22203 and a copy sent by electronic mail to Renu M. Brennan, Bar Counsel.

Entered this ____ day of August, 2023

Virginia State Bar Disciplinary Board

By _____

Kamala H. Lannetti
Chair

RECEIVED

Aug 10, 2023

VIRGINIA STATE BAR
CLERK'S OFFICE

VIRGINIA:

### BEFORE THE VIRGINIA STATE BAR DISCIPLINARY BOARD

IN THE MATTER OF
**CHRISTOPHER LOUIS CONTRERAS**          VSB Docket Nos. 23-042-127395,
                                                                    23-042-127424,
                                                                    23-042-127768,
                                                                    23-042-126886,
                                                                    23-042-127699

### AFFIDAVIT DECLARING CONSENT TO REVOCATION

Christopher Louis Contreras, after being duly sworn, states as follows:

1.      That I was licensed to practice law in the Commonwealth of Virginia on April 12, 2019;

2.      That I submit this Affidavit Declaring Consent to Revocation pursuant to Rule of Court, Part 6, Section IV, Paragraph 13-28;

3.      That my consent to revocation is freely and voluntarily rendered, that I am not being subjected to coercion or duress, and that I am fully aware of the implications of consenting to the revocation of my license to practice law in the Commonwealth of Virginia;

4.      I am aware that there are currently pending complaints, investigations into, or a proceedings involving, allegations of misconduct, the docket numbers for which are set forth above, and the specific natures of which are here set forth in the attached Certification submitted as Exhibit A;

5.      I acknowledge that the material facts upon which the allegations of misconduct are predicated are true; and

6.     I submit this Affidavit and consent to the revocation of my license to practice law in the Commonwealth of Virginia because I know that if the disciplinary proceedings based on the said alleged misconduct were brought or prosecuted to a conclusion, I could not successfully defend them.

Executed and dated on ___August 10, 2023___.

Christopher Louis Contreras
Respondent

COMMONWEALTH OF VIRGINIA
CITY/COUNTY OF ___Fairfax___, to wit:

The foregoing Affidavit Declaring Consent to Revocation was subscribed and sworn to before me by Christopher Louis Contreras on ___August 10th, 2023___.

Notary Public

My Commission expires: ___10/31/27___.



RECEIVED
Apr 21, 2023
VIRGINIA STATE BAR
CLERK'S OFFICE

VSB
EXHIBIT
A

**VIRGINIA:**

**BEFORE THE FOURTH DISTRICT SUBCOMMITTEE, SECTION II
OF THE VIRGINIA STATE BAR**

**IN THE MATTERS OF
CHRISTOPHER LOUIS CONTRERAS**                 **VSB Docket Nos. 23-042-127395,
                                                                  23-042-127424,
                                                                  23-042-127768,
                                                                  23-042-126886,
                                                                  and
                                                                  23-042-127699**

**SUBCOMMITTEE DETERMINATION
(CERTIFICATION)**

On April 13, 2023, a meeting in this matter was held before a duly convened Fourth

District Subcommittee, Section II consisting of Natalie Troyer Page, Esq., Subcommittee Chair;

Foster S.B. Friedman, Esq., Member; and Barbara Moore, Lay Member.  Pursuant to Part 6, §

IV, ¶ 13-15.B.3 of the Rules of the Supreme Court of Virginia, the Fourth District

Subcommittee, Section II of the Virginia State Bar hereby serves upon Christopher Louis

Contreras ("Respondent") the following Certification:

**I.      ALLEGATIONS OF FACT**

1.      In 2019 Respondent was admitted to the Virginia State Bar ("VSB").  At all relevant

        times, Respondent was a member of the VSB.

2.      Respondent is a solo practitioner who practices immigration, criminal, and family law.

3.      From 2019 to June 2022, Respondent practiced law at his uncle's law office[1], The Law

        Office of Orlando A. Gamarra.

4.      In July 2022 Respondent opened his own law office.

---

[1] It is unclear if Respondent practiced as part of his uncle's office or was a solo practitioner.  Based on pleadings and Respondent's response to the bar complaint, he broke off from his uncle's firm and opened his solo practice in July 2022.  In his interview with the bar investigator, Respondent stated that he has been a sole practitioner since being licensed in 2019, although he had limited administrative assistance from his uncle's law office staff.

5.   On October 19 and 20, 2022, Respondent presented two checks from his law firm
     account, not a trust account, to the Civil Division of the Arlington Clerk's Office
     ("Arlington Clerk's Office") as filing fees in two divorce cases.  Both checks were
     returned for insufficient funds.  On October 24, 2022, the Arlington Clerk's Office
     advised Respondent that the checks were returned for insufficient funds.  Respondent
     paid the filing fees in cash.

6.   The matter was referred to the VSB as part of Docket No 23-042-127935 below.  In his
     November 28, 2022 response to the VSB regarding the returned checks, Respondent
     stated that he used the wrong checkbook for the payments.

7.   In his February 27, 2023 interview with the VSB Investigator, Respondent stated that the
     checks were drawn from his personal account, and he had not made a deposit to cover
     them.  He stated that he (1) only had a trust account from February/March to September
     2022, (2) opened the trust account for personal injury cases but never had any client
     funds in the trust account, and (3) did not use the trust account or deposit advance fees in
     the trust account.  Instead, Respondent treated the flat fees as earned upon receipt and
     deposited the flat fees in his personal account.

8.   While Respondent, by email dated March 2, 2023, advised the VSB investigator that he
     was opening a trust account, Respondent did not respond to the VSB investigator's
     subsequent attempts to confirm that Respondent opened and is using a trust account.

     **VSB Complainant:  VSB**
     **VSB Docket No. 23-042-127395**

9.   In 2021, Client ESAH retained Respondent to file an uncontested divorce from his wife
     in Arlington Circuit Court.  ESAH does not speak English.  Respondent charged ESAH a
     flat fee of either $1,000 or $1,100.  There is no written representation agreement.

2

10.   On June 8, 2021, per Respondent, ESAH paid Respondent $500.  ESAH believes he paid
      Respondent between $560 and $600.

11.   Respondent did not deposit the fees paid by ESAH into a trust account or otherwise
      safeguard ESAH's funds.  He deposited the funds into his personal account.

12.   Respondent did not keep any records regarding the fees paid by ESAH nor did he provide
      ESAH with any accountings.

13.   On March 11, 2022, on behalf of ESAH, Respondent filed a bill of complaint for divorce,
      a praecipe, plaintiff's affidavit in support of divorce, an affidavit of publication, an order
      of publication, and a final decree of divorce in Arlington Circuit Court.

14.   On April 7, 2022, Respondent met with ESAH at Respondent's law office.

15.   By Order entered April 8, 2022, the Arlington Circuit Court scheduled an *ore tenus*
      hearing for final adjudication of ESAH's complaint for June 22, 2022.

16.   Respondent did not advise ESAH that an *ore tenus* hearing was scheduled for June 22,
      2022. As set forth below, ESAH understood that a hearing would be held in July.

17.   Respondent did not appear at the *ore tenus* hearing on June 22, 2022.  Respondent told
      the bar investigator that "he doesn't think that he put it [the hearing] on his calendar."

18.   By orders entered June 29 and July 1, 2022, the Arlington Circuit Court dismissed,
      without prejudice, ESAH's divorce for failure to prosecute.

19.   Respondent states he was on vacation from July 1 to July 8, 2022 and was then in the
      process of moving his law office.

20.   Respondent did not tell ESAH what had happened including that ESAH's divorce had
      been dismissed.  Instead, in July 2022, while ESAH was on his way to Arlington Circuit
      Court for a hearing he believed was scheduled, Respondent called ESAH and told ESAH

3

that he did not have to go to the hearing because the Arlington Circuit Court had already

signed the divorce decree. ESAH then went to Respondent's office, then at Respondent's

uncle's location, and Respondent gave ESAH a copy of a purported divorce decree. *See*

Exhibit A. The third page of the purported decree bore the electronic signature of The

Honorable Judith L. Wheat ("Judge Wheat"), but the purported decree did not have a date

stamp. A date stamp is automatically applied to Judge Wheat's signature when Judge

Wheat signs a document electronically. Under the electronic signature, CIRCUIT

COURT JUDGE is misspelled as CIRCUIT "COUT" JUDGE.



21.    Based on Respondent's representations, ESAH believed that Exhibit A was a validly

executed divorce decree signed by Judge Wheat.

22.     The investigation, including a search of all cases in Arlington Circuit Court in which

        Respondent was counsel of record, revealed an almost identical signature page bearing

        Judge Wheat's signature at page 3, as with the decree Respondent provided to ESAH.

        COURT is also misspelled as "COUT."   The only difference in the signature pages is the

        date stamp of March 4, 2022. *See* Exhibit B.

ENTERED THIS ____ day of ___

*(signature)*

                                                                            03/04/2022
                                        JUDITH L. WHEAT
                                        JUDGE

                              **CIRCUIT COUT JUDGE**

**I ASK FOR THIS:**

*(signature)*

Christopher L. Contreras, Esq.
*Counsel for Plaintiff*
The Law Office of Orlando A. Gamarra
313 North Glebe Rd., Suite 200
Arlington, VA 22203
Tel: 703-243-9555
Fax: 703-243-0092
VSB 94175

23.     On November 3, 2022, ESAH, who by then sought to get married, attempted to have the

        Arlington Clerk's Office" certify the divorce decree that Respondent had provided

        ESAH. *See* Exhibit A.

24.     Upon review of the file, the Arlington Clerk's Office saw that ESAH's divorce was

        dismissed on June 22, 2022 because of Respondent's failure to appear at the *ore tenus*

        hearing, and the decree was never signed by Judge Wheat.

5

25.   The Arlington Clerk's Office advised ESAH that (1) there was no entered divorce decree in the file, and (2) the file contained an unsigned version of the divorce decree and a dismissal order for failure to prosecute entered June 29, 2022.

26.   The Arlington Clerk's Office told ESAH to contact Respondent.  ESAH attempted to call Respondent and was told that Respondent had moved offices.  ESAH attempted to see Respondent at his new office, but the receptionist did not let him see Respondent, as ESAH did not have appointment.  ESAH then tried unsuccessfully to make an appointment with Respondent.  Respondent never returned ESAH's calls, nor did he refund any portion of the fee to ESAH.

27.   ESAH hired another attorney who filed a new divorce proceeding.

28.   The Arlington Circuit Court referred this matter[2] to the VSB.

29.   In his response to the bar complaint, dated November 28, 2022, Respondent stated as follows:

> … I have checked through my files and do not have a copy of this file in my office as it was already closed.  Here is a recollection of what I recall happened in this case.  This is a divorce case where we tried to get the other party to agree to do it as a no contest divorce, but we did not have an address for them. After failing to obtain the address a divorce through publication was to be pursued. I remember meeting with [ESAH] after he followed up with me to get an update on his divorce proceeding a few months after we filed and remember seeing a note that said we had received the divorce decree. I remember he came a few months later as he was working out of state, and I grabbed the file made a copy of the decree and gave it to him. I don't remember reviewing the decree before giving it to him.
>
> I am unsure what happened here, but I believe there must have been a mix up in the papers as they were being received and filed. I remember around the time that [ESAH] contacted me to follow up on his case I was in the middle of breaking off from the firm I had been working at and starting up my own solo practice. I had

---

[2] The Court also advised the VSB of the checks returned in October 2022 for insufficient funds.

> also just lost my secretary that used to help me with all my cases
> as she had to relocate.

30. In his February 27, 2023 interview with the bar investigator, Respondent said that "he

looked through the files and … thinks that the papers got mixed up… he did his own

filing and … can't say that anyone else did it… he doesn't think that he asked for his

uncle's staff to do it." Respondent believed that he gave ESAH a file stamped copy of

the divorce decree, which Respondent states he received from the clerk, on April 7, 2022.

April 7, 2022 was less than a month after Respondent filed the divorce complaint.

Respondent admitted that he had the orders setting the *ore tenus* hearing and dismissing

the case in his file. Respondent believed that ESAH sent him the orders dismissing the

case, and Respondent did not recall what else transpired as he was then moving his law

offices.

31. Respondent's only explanation regarding the electronically signed and undated decree he

gave ESAH is that it was misfiled. Respondent stated that he has other cases with Judge

Wheat, and "it might be the case that the signed page was from one of those cases and

that it was misfiled… all [Respondent] did was grab the file and make a copy of the order

and give it to [ESAH]."

32. In fact, Respondent altered Judge Wheat's signature page from another order in a case he

handled, Exhibit B, by deleting the date, and then attached the altered signature page to

ESAH's decree, Exhibit A, to make it appear as if the Court had entered the decree when

in fact the Court had dismissed ESAH's divorce for failure to prosecute.

33. As set forth below, Respondent's actions violate Virginia Rules of Professional Conduct

1.3(a) Diligence; 1.4(a-c) Communication; 1.15(a)(1), (b)(3), (b)(5) Safekeeping

7

Property; 1.16(d) Declining or Terminating Representation; 8.1(a),(d) Bar Admission and

Disciplinary Matters; and 8.4(a-c) Misconduct.

**VSB Complainant: Francisco O. Moran**
**VSB Docket No. 23-042-127424**

34.   In February 2022, Francisco O. Moran retained Respondent to defend him on a charge of

rape by physical helplessness or mental incapacity in Fairfax Circuit Court.  The victim

was alleged to be intoxicated at the time of the offense.  Moran was charged and detained

in July 2020.  From 2020 to October 2021, Moran had court appointed counsel.  From

October 2021 to February 2022, Moran was represented by the Fairfax Public Defender.

35.   Moran understood that Respondent's fee for the representation was $7,000.  There is no

written representation agreement.

36.   Moran's employer paid Respondent $2,500, of which $500 was for the initial

consultation fee.  Moran understood that $1,000 of the $2,500 was to be used to retain an

expert.

37.   Respondent did not deposit any of the funds paid on Moran's behalf in a trust account or

otherwise safeguard them.

38.   Respondent did not keep any records regarding the fees on behalf of Moran nor did he

provide Moran with any accountings.

39.   By Order entered February 1, 2022, prior to Respondent's substitution as Moran's

counsel, upon motion by the Fairfax Public Defender, Dawn Butorac, and after an *ex*

*parte* hearing, the Fairfax Circuit Court had authorized Moran funds to retain a

toxicologist.

8

40. By Order entered February 11, 2022, also prior to Respondent's substitution as counsel and on Butorac's motion, the Fairfax Circuit Court authorized Moran $2,500 for an expert in sexual assault examinations.

41. Respondent attended at least one of these hearings and was aware of the importance of expert testimony, particularly with respect to toxicology. Respondent does not dispute that he agreed to retain an expert.

42. By Agreed Order of Substitution of Counsel entered February 25, 2022, Respondent formally substituted in as counsel in lieu of the Fairfax Public Defender.

43. By email dated February 23, 2022, Butorac asked Respondent to provide her with an external hard drive so that she could provide him with Moran's file. The file contained information about experts and videos showing Moran's interactions with the alleged victim.

44. By email dated March 1, 2022, Respondent told Butorac that he would drop off an external hard drive at her office and asked Butorac to let him know when it was ready for pick up. Respondent did not do so. Respondent told the bar investigator that he did not know why he did not pick up the file and that he thought it was because he got what he needed from the Commonwealth's Attorney.

45. Other than the initial consultation, Respondent met with Moran three to four times before the trial April 18-21, 2022. One of the meetings was on Friday before the trial, at which Moran said Respondent was with him for an hour or so. Moran said that Respondent told him that he would return that weekend to plan for the defense, but Respondent did not do so.

46. Respondent never discussed the case with Butorac.

9

47.    Respondent did not retain an expert.  Respondent did not advise Moran that he did not

retain an expert.  Respondent told the bar investigator that he could not find an expert.

48.    The jury found Moran guilty of rape.  The order of conviction was entered May 18, 2022,

and the matter was continued to October 21, 2022 for sentencing.

49.    Respondent visited Moran once after the trial, on October 20, 2022, the day prior to the

sentencing hearing.

50.    On October 21, 2022, and by Order subsequently entered November 10, 2022, Moran

was sentenced to 30 years with 15 years suspended.

51.    After the sentencing hearing, Moran repeatedly sought to communicate with Respondent

to request an appeal.

52.    By letter dated October 26, 2022, received by the VSB on November 7, Moran filed a bar

complaint.  In part Moran stated, "As of 10/25/22 I have made attempts to contact

[Respondent] about the appeal process, I would like for him to be investigated due to

abandoned and failure to provide documents like my Court transcripts my discovery or

anything pertaining my case even when my family and myself left messages."

53.    By email dated October 31, 2022, which Respondent acknowledged receiving, Butorac

asked Respondent to contact Moran regarding an appeal:

> Mr. Contreras,
> Mr. Moran has emailed me several times asking about an
> appeal for his case.  He has also said that you are not calling
> him back.  If you are not going to handle an appeal for his
> case, please file a motion to appoint counsel to do his appeal.
> As the time is limited for doing so, I suggest you file that
> motion immediately.

54.    Respondent did not contact Moran regarding filing an appeal.

10

55.   Moran also wrote twice to the Fairfax Circuit Court.   Moran submitted a "Pro-se request for reconsideration or rehearing" dated November 1, 2022 followed by a letter, filed November 15, 2022, requesting new counsel.   Moran stated in part, "Mr. Contreras told me that we would discuss Appeal and Reconsideration on October 24, 2022.   He Failed to meet with me and has not returned my phone calls."

56.   By email dated November 15, 2022, Patty Ramirez, Court Clerk to The Honorable Manuel A. Capsalis ("Judge Capsalis"), attached the second letter from Moran to Judge Capsalis and asked that Respondent confirm as soon as possible that he still represented Moran.

57.   By email dated November 15, 2022 to Ms. Ramirez, Respondent represented to her that he had visited Moran the previous week and that Moran did not voice any of the concerns in Moran's submissions to the Court to Respondent.   Respondent stated that he believed he was still representing Moran and that he would follow up before the end of the week.

58.   Respondent had not visited Moran the previous week.

59.   Finally, on November 18, 2022, which was 28 days after the sentencing, Respondent visited Moran.

60.   By email dated November 18, 2022 to Ms. Ramirez, Respondent advised her that he had just met with Moran who needed time to decide how to proceed.   Respondent concluded, "We will update the court of his decision by Friday November 25, 2022."

61.   In response to Moran's complaint to the VSB, by letter dated December 5, 2022, Respondent advised the VSB, "After the sentencing hearing, I did tell Mr. Moran I would meet with him, but I was not able to make it to him in time… I have spoken to him since then and I am in the process of doing the appeal in his [sic] so we can continue fighting

11

on the appeal." He concluded the letter, "I always kept Mr. Moran's best interest in mind

.... now even as I am working on appealing it."

62.   By rebuttal letter dated December 27, 2022, Moran advised the VSB:

> My lawyer came on November 21, 2022 to talk about the complaint
> I send it to you, and he told me he will come back on November 25 after
> thanksgiving.
> Today is December 27 which I am still waiting for him, I don't know
> when he is coming back, he never call me, never pick up my calls,
> and never give me the information about my Reconsideration
> and the Appeal.
> I am also ask him about my Discovery and my Transcripts
> which he never produce it to me.

63.   Respondent never noted an appeal on Moran's behalf.   Respondent did not consult with

Moran about a delayed appeal.  Respondent did nothing further for Moran.

64.   As set forth below, Respondent's actions violate Virginia Rules of Professional Conduct

1.1 Competence; 1.3(a) Diligence; 1.4(a-c) Communication; 1.15(a)(1), (b)(3), (b)(5)

Safekeeping Property; 1.16(d) Declining or Terminating Representation; 8.1(a),(d) Bar

Admission and Disciplinary Matters; and 8.4(c) Misconduct.

**VSB Complainant:  Reina A. Cruz-Iglesias**
**VSB Docket No. 23-042-127768**

65.   On or about June 14, 2021, Respondent agreed to represent Carlos Portillo Ortez on

charges of aggravated sexual battery in Fairfax Circuit Court.   Respondent charged a flat

fee of $10,000.00.   There is no written representation agreement.

66.   Respondent was paid $8,600.00.   Respondent did not deposit the funds paid by Ortez or

on Ortez's behalf in a trust account or otherwise preserve these funds.   Respondent did

not keep any records regarding the funds paid by or on Ortez's behalf.   Respondent did

not provide any accounting of the fees paid.

12

67.   Respondent failed to represent Ortez competently and diligently as set forth in the

attached Motion for New Trial, attached as Exhibit C.  *See also* Exhibit D, Order entered

December 16, 2022 granting a motion for new trial.   Respondent failed to:

- File a discovery motion;

- Respond in writing to the Commonwealth's motion pursuant to Va. Code Section
  19.2-268.3 to admit hearsay statements from the victim during a forensic
  interview, obtain a complete ruling from the court on the motion, or object to the
  forensic interviewer's testimony;

- Discuss, prior to trial, with defendant whether defendant wanted to be tried by
  judge or jury;

- Conduct a thorough cross-examination of the complaining witness;

- Cite any case law or statutes in his two-sentence initial motion to strike and to re-
  raise the issue of inherent incredibility in the renewed motion to strike; and

- Properly advise witnesses of the Rule on Witnesses resulting in his
  decision/inability to call two of five defense witnesses.

Respondent also stipulated to the admission of two exhibits which he subsequently tried

to discredit in closing argument.

68.   On April 6, 2022, Ortez was convicted on two counts of aggravated sexual battery.

69.   Prior to the June 24, 2022 sentencing hearing Ortez fired Respondent.  Respondent did

not seek leave to withdraw as counsel.  Respondent did not appear at the June 24, 2022

sentencing hearing.  On June 24, 2022, the Fairfax Circuit Court continued the matter and

appointed the Fairfax Public Defender to represent Ortez.

13

70.    The Fairfax Public Defender successfully moved for a new trial and to set aside the verdict based on ineffective assistance of counsel. *See* Exhibits C-D.

71.    The Fairfax Public Defender requested Ortez's file from Respondent. Respondent did not provide the file to the Fairfax Public Defender.

72.    As set forth below, Respondent's actions violate Virginia Rules of Professional Conduct 1.1 Competence; 1.3(a) Diligence; 1.15(a)(1), (b)(3), (b)(5) Safekeeping Property; and 1.16(a)(3), (c-e) Declining or Terminating Representation.

**VSB Complainant: Monica L. Alconini**
**VSB Docket No. 23-042-126886**

73.    On April 6, 2021, Monica L. Alconini hired Respondent to represent her in a visitation matter. She paid Respondent an advance fee of $3,500. Respondent did not deposit the $3,500 in a trust account or preserve the fee until it was earned.

74.    Respondent did not keep any records regarding the fees paid by Alconini nor did he provide Alconini with any accountings.

75.    As set forth below, Respondent's actions violate Virginia Rules of Professional Conduct 1.15(a)(1) and (b)(3) Safekeeping Property.

**VSB Complainant: Carol Y. Betancourt**
**VSB Docket No. 23-042-127699**

76.    On November 22, 2022, Carol Betancourt retained Respondent to handle her divorce. On November 23, 2022, Ms. Betancourt paid Respondent an advance fee of $450.00. Respondent did not deposit the advance fee in a trust account or preserve the fee until it was earned.

77.    Respondent did not keep any records regarding the fees paid by Betancourt nor did he provide her with any accountings.

14

78.     As set forth below, Respondent's actions violate Virginia Rules of Professional Conduct

1.15(a)(1) and (b)(3) Safekeeping Property.

## II.     NATURE OF MISCONDUCT

Such conduct by Respondent constitutes misconduct in violation of the following

provisions of the Rules of Professional Conduct[3]:

**VSB Complainant:  VSB**
**VSB Docket No. 23-042-127395**

*By failing to calendar and attend the June 22, 2022 ore tenus hearing, and by failing to tell his client about the June 22, 2022 ore tenus hearing, Respondent violated 1.3(a).*

RULE 1.3     Diligence

(a) A lawyer shall act with reasonable diligence and promptness in representing a client.

*By failing to tell his client that he missed the June 22, 2022 ore tenus hearing and that the Arlington County Circuit Court dismissed his client's divorce for failure to prosecute, and by failing to answer any of his client's attempts to communicate with him after November 3, 2022, when the client contacted Respondent to determine what happened with respect to the divorce decree, and by misrepresenting the facts and making it appear as if the Court entered a decree in ESAH's case, when in fact the Court dismissed ESAH's case for failure to prosecute, Respondent violated Rules 1.4(a) – (c).*

RULE 1.4     Communication

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly

comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to

make informed decisions regarding the representation.

(c) A lawyer shall inform the client of facts pertinent to the matter and of communications from

another party that may significantly affect settlement or resolution of the matter.

---

[3] *Italicized language is explanatory and is not intended to limit the findings of the tribunal.*

*By failing to deposit the unearned legal fee in a trust account or otherwise preserve his client's fee, Respondent violated Rule 1.15(a)(1).*

RULE 1.15      Safekeeping Property

(a) Depositing Funds.

(1) All funds received or held by a lawyer or law firm on behalf of a client or a third party, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses shall be deposited in one or more identifiable trust accounts; all other property held on behalf of a client should be placed in a safe deposit box or other place of safekeeping as soon as practicable.

*By failing to keep any records regarding the fee(s) paid by ESAH and by failing to provide any accountings to ESAH, Respondent violated Rule 1.15(b)(3).*

RULE 1.15      Safekeeping Property

(b) Specific Duties. A lawyer shall:

(3) maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them;

*By depositing the fee paid by ESAH in his personal account, and not returning the funds to ESAH, Respondent violated Rule 1.15(b)(5).*

RULE 1.15      Safekeeping Property

(b) Specific Duties. A lawyer shall:

(5) not disburse funds or use property of a client or of a third party with a valid lien or assignment without their consent or convert funds or property of a client or third party, except as directed by a tribunal.

*By failing to return any portion of the advance fee paid by ESAH when the divorce was dismissed, and by failing to take any steps reasonably practicable to protect ESAH's interest, Respondent violated Rule 1.16(d).*

RULE 1.16      Declining Or Terminating Representation

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably

practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for

employment of other counsel, refunding any advance payment of fee that has not been earned and

handling records as indicated in paragraph (e).

*By telling the VSB in his response to the bar complaint and in his interview with the VSB investigator that he received the decree that Respondent forged from the Arlington County Circuit Court and that it was misfiled, and by not disclosing to the VSB that he had in fact forged the decree and presented the same to his client, Respondent violated Rule 8.1(a) and (d).*

RULE 8.1      Bar Admission And Disciplinary Matters

An applicant for admission to the bar, or a lawyer already admitted to the bar, in connection with

a bar admission application, any certification required to be filed as a condition of maintaining or

renewing a  license to practice law, or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact;

***

(d) obstruct a lawful investigation by an admissions or disciplinary authority.

*By telling his client that the Arlington County Circuit Court entered a decree granting his client a divorce, when in fact the Arlington County Circuit Court dismissed his client's case without prejudice for failure to prosecute, and by forging the divorce decree and presenting the same to his client to make his client believe that the Arlington County Circuit Court had entered the decree and granted the divorce when in fact the Arlington County Circuit Court had dismissed the client's case without prejudice because of Respondent's failure to prosecute the case and attend the ore tenus hearing, Respondent violated Rules 8.4(a)-(c).*

RULE 8.4      Misconduct

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce

another to do so, or do so through the acts of another;

17

(b) commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law;

\*\*\*

VSB Complainant:  Francisco O. Moran
VSB Docket No. 23-042-127424

*By failing (1) to meet with his client sufficiently to defend his client, (2) to obtain and review the Fairfax Public Defender's file including the materials with respect to expert selection, (3) hire an expert, and (4) note an appeal and/or file a motion for delayed appeal, despite his client's stated desire to appeal, Respondent violated Rules 1.1 and 1.3(a).*

RULE 1.1      Competence

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

RULE 1.3      Diligence

(a) A lawyer shall act with reasonable diligence and promptness in representing a client.

*By failing to keep his client advised regarding the case, including regarding the retention of an expert, and by failing to respond to his client's numerous attempts to communicate regarding an appeal, Respondent violated Rule 1.4(a)-(c).*

RULE 1.4      Communication

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

(c) A lawyer shall inform the client of facts pertinent to the matter and of communications from another party that may significantly affect settlement or resolution of the matter.

18

*By failing to deposit the unearned legal fee in a trust account or otherwise preserve the advance legal fee, Respondent violated Rule 1.15(a)(1).*

RULE 1.15      Safekeeping Property

(a) Depositing Funds.

(1) All funds received or held by a lawyer or law firm on behalf of a client or a third party, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses shall be deposited in one or more identifiable trust accounts; all other property held on behalf of a client should be placed in a safe deposit box or other place of safekeeping as soon as practicable.

*By failing to keep any records or provide any accountings of the fee paid by or on behalf of his client, Respondent violated Rule 1.15(b)(3).*

RULE 1.15      Safekeeping Property

(b) Specific Duties. A lawyer shall:

(3) maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them;

*By depositing the fee  paid by or on behalf of his client in his personal account, and by not returning the funds, Respondent violated Rule 1.15(b)(5).*

RULE 1.15      Safekeeping Property

(b) Specific Duties. A lawyer shall:

(5) not disburse funds or use property of a client or of a third party with a valid lien or assignment without their consent or convert funds or property of a client or third party, except as directed by a tribunal.

*By telling the VSB, including in his response to the bar complaint, that he was "in the process of doing the appeal in his [sic] so we can continue fighting on the appeal" and by*

19

*further stating .... "even as I am working on appealing it" when Respondent did not file an*
*appeal, Respondent violated Rule 8.1(a) and (d).*

RULE 8.1      Bar Admission And Disciplinary Matters

An applicant for admission to the bar, or a lawyer already admitted to the bar, in connection with

a bar admission application, any certification required to be filed as a condition of maintaining or

renewing a  license to practice law, or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact;

***

(d) obstruct a lawful investigation by an admissions or disciplinary authority.

*By his November 15, 2022 email to the Fairfax Circuit Court in which Respondent represented*
*that he had visited his client the previous week, when Respondent had not visited his client the previous*
*week, Respondent violated Rule 8.4(c).*

RULE 8.4      Misconduct

It is professional misconduct for a lawyer to:

***

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects

adversely on the lawyer's fitness to practice law;

***

VSB Complainant:  Reina A. Cruz-Iglesias
VSB Docket No. 23-042-127768

*By failing to effectively represent his client, including by failing to:*

- *File a discovery motion;*
- *Respond in writing to the Commonwealth's motion pursuant to Va. Code Section*
  *19.2-268.3 to admit hearsay statements from the victim during a forensic*
  *interview, obtain a complete ruling from the court on the motion, or object to the*
  *forensic interviewer's testimony;*
- *Discuss, prior to trial, with his client whether he wanted to be tried by judge or*
  *jury;*
- *Conduct a thorough cross-examination of the complaining witness;*

20

- *Cite any case law or statutes in his two-sentence initial motion to strike and to re-raise the issue of inherent incredibility in the renewed motion to strike;*
- *Properly advise witnesses of the Rule on Witnesses resulting in his decision/inability to call two of five defense witnesses;*
- *Appear at the sentencing hearing when he was still counsel of record; and*
- *Provide successor counsel with the file,*

*and by stipulating to the admission of two exhibits which Respondent subsequently tried to discredit in closing argument, Respondent violated Rules 1.1 and 1.3(a).*

RULE 1.1      Competence

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

RULE 1.3      Diligence

(a) A lawyer shall act with reasonable diligence and promptness in representing a client.

By failing to deposit the $8,600.00 in a trust account or otherwise safeguard the advanced fee paid on behalf

*By failing to deposit the unearned legal fee of $8,600.00 paid on his client's behalf in a trust account or otherwise preserve the fee paid on behalf of his client, Respondent violated Rule 1.15(a)(1).*

RULE 1.15      Safekeeping Property

(a) Depositing Funds.

(1) All funds received or held by a lawyer or law firm on behalf of a client or a third party, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses shall be deposited in one or more identifiable trust accounts; all other property held on behalf of a client should be placed in a safe deposit box or other place of safekeeping as soon as practicable.

*By failing to keep any records or provide any accountings of the $8,600.00 paid by or on behalf of client to Respondent, Respondent violated Rule 1.15(b)(3).*

RULE 1.15      Safekeeping Property

(b) <u>Specific Duties.</u> A lawyer shall:

(3) maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them;

*By depositing the $8,600 paid in his personal account, and not returning the advance fee paid on behalf of his client, Respondent violated Rule 1.15(b)(5).*

RULE 1.15    Safekeeping Property

(b) <u>Specific Duties.</u> A lawyer shall:

(5) not disburse funds or use property of a client or of a third party with a valid lien or assignment without their consent or convert funds or property of a client or third party, except as directed by a tribunal.

*By failing to withdraw as counsel after his client discharged him, Respondent violated Rule 1.16(a)(3).*

RULE 1.16    Declining Or Terminating Representation

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

\*\*\*

(3) the lawyer is discharged.

*By failing to appear at the June 24, 2022 sentencing hearing when he was still counsel of record, Respondent violated Rule 1.16(c).*

RULE 1.16    Declining Or Terminating Representation

(c) In any court proceeding, counsel of record shall not withdraw except by leave of court after compliance with notice requirements pursuant to applicable Rules of Court. In any other matter, a lawyer shall continue representation notwithstanding good cause for terminating the representation, when ordered to do so by a tribunal.

22

*By failing to take any steps to protect his client's interests, including but not limited to, providing the file to the Public Defender, Respondent violated Rule 1.16(d) and (e).*

RULE 1.16    Declining Or Terminating Representation

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably

practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for

employment of other counsel, refunding any advance payment of fee that has not been earned and

handling records as indicated in paragraph (e).

(e) All original, client-furnished documents and any originals of legal instruments or official

documents which are in the lawyer's possession (wills, corporate minutes, etc.) are the property of the

client and, therefore, upon termination of the representation, those items shall be returned within a

reasonable time to the client or the client's new counsel upon request, whether or not the client has paid

the fees and costs owed the lawyer.  If the lawyer wants to keep a copy of such original documents, the

lawyer must incur the cost of duplication. Also upon termination, the client, upon request, must also be

provided within a reasonable time copies of the following documents from the lawyer's file, whether or

not the client has paid the fees and costs owed the lawyer: lawyer/client and lawyer/third-party

communications; the lawyer's copies of client-furnished documents (unless the originals have been

returned to the client pursuant to this paragraph); transcripts, pleadings and discovery responses;

working and final drafts of legal instruments, official documents, investigative reports, legal

memoranda, and other attorney work product documents prepared or collected for the client in the

course of the representation; research materials; and bills previously submitted to the client. Although

the lawyer may bill and seek to collect from the client the costs associated with making a copy of these

materials, the lawyer may not use the client's refusal to pay for such materials as a basis to refuse the

client's request. The lawyer, however, is not required under this Rule to provide the client copies of

23

billing records and documents intended only for internal use, such as memoranda prepared by the lawyer discussing conflicts of interest, staffing considerations, or difficulties arising from the lawyer-client relationship. The lawyer has met his or her obligation under this paragraph by furnishing these items one time at client request upon termination; provision of multiple copies is not required. The lawyer has not met his or her obligation under this paragraph by the mere provision of copies of documents on an item-by-item basis during the course of the representation.

VSB Complainant:  Monica L. Alconini
VSB Docket No. 23-042-126886

*By failing to deposit the unearned legal fee in a trust account or otherwise preserve his client's fee, Respondent violated Rule 1.15(a)(1).*

RULE 1.15    Safekeeping Property

(a) Depositing Funds.

(1) All funds received or held by a lawyer or law firm on behalf of a client or a third party, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses shall be deposited in one or more identifiable trust accounts; all other property held on behalf of a client should be placed in a safe deposit box or other place of safekeeping as soon as practicable.

*By failing to keep any records or provide any accountings of the legal fee paid by or on behalf of client to Respondent, Respondent violated Rule 1.15(b)(3).*

RULE 1.15    Safekeeping Property

(b) Specific Duties. A lawyer shall:

(3) maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them;

24

VSB Complainant:  Carol Y. Betancourt
VSB Docket No. 23-042-127699

*By failing to deposit the unearned legal fee in a trust account or otherwise preserve his client's fee, Respondent violated Rule 1.15(a)(1).*

RULE 1.15      Safekeeping Property

(a) Depositing Funds.

(1) All funds received or held by a lawyer or law firm on behalf of a client or a third party, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses shall be deposited in one or more identifiable trust accounts; all other property held on behalf of a client should be placed in a safe deposit box or other place of safekeeping as soon as practicable.

*By failing to keep any records or provide any accountings of the legal fee paid by or on behalf of client to Respondent, Respondent violated Rule 1.15(b)(3).*

RULE 1.15      Safekeeping Property

(b) Specific Duties. A lawyer shall:

(3) maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them;

## III.    CERTIFICATION

Accordingly, it is the decision of the Subcommittee to certify the above matters to the

Virginia State Bar Disciplinary Board.

FOURTH DISTRICT, SECTION II
SUBCOMMITTEE OF THE VIRGINIA STATE
BAR

By _____

     Natalie T. Page, Esq..
     Subcommittee Chair

## CERTIFICATE OF SERVICE

I certify that on ___April 21, 2023___ , I emailed to

christopher.louis.contreras@gmail.com and mailed by first-class mail and certified mail a true

and correct copy of the foregoing Subcommittee Determination (Certification) to Christopher

Louis Contreras, Esquire, Respondent, at Contreras Law PLC, 4250 Fairfax Dr. 6th Floor,

Arlington, VA 22203, Respondent's last address of record with the Virginia State Bar.

*Renu Brennan*

_____

     Renu M. Brennan
     Bar Counsel

26